**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **THE BOARD OF REGENTS OF THE** **UNIVERSITY OF TEXAS SYSTEM**, | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | |
| | § | **Civil Action No. 4:16-cv-03155** |
| **NANTHEALTH, INC.;** **NANTWORKS, LLC;** **NANT HOLDINGS IP, LLC;** **and DR. PATRICK SOON-SHIONG,** | § § § § § | |
| **Defendants.** | § § § | |

## DEFENDANTS' MOTION TO DISMISS OR TRANSFER

Pursuant to Rule 12(b)(6) and 12(b)(3) of the Federal Rules of Civil Procedure, Defendants NantWorks, LLC ("NantWorks"), Nant Holdings IP, LLC ("Nant IP"), and Dr. Patrick Soon-Shiong ("Dr. Soon-Shiong") (together, the "California Defendants") respectfully move the Court to dismiss this action for lack of personal jurisdiction.  In the alternative, pursuant to 28 U.S.C. § 1404, all of the Defendants, including Defendant NantHealth, Inc. ("NantHealth"), respectfully move the Court to transfer this action to the United States District Court for the Central District of California, where all of the Defendants are located and are subject to personal jurisdiction.  Additionally, NantHealth moves for order to stay the time for NantHealth to answer or otherwise respond to the First Amended Complaint pending the Court's decision on this motion, and, along with all other Defendants, moves for an order to stay discovery on the merits pending the Court's decision on this motion.  This motion is supported by the accompanying declaration of Dr. Patrick Soon-Shiong ("Decl.").

1

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff The Board of Regents of the University of Texas System ("Plaintiff" or the "Board") filed this action for federal trademark infringement, common law trademark infringement, and declaratory relief against four defendants, NantHealth, NantWorks, Nant IP, and Dr. Patrick Soon-Shiong, based on use of the following trademarks: CANCER MOONSHOT 2020; CANCER MOONSHOT 2020 FOUNDATION; and CANCER MOONSHOT NETWORK NEWS (together, the "Nant Marks") in connection with cancer-related research, and informational and fundraising services.  Plaintiff contends that the Nant Marks infringe Plaintiff's alleged rights in the MOON SHOTS, MOON SHOTS PROGRAM, and CANCERMOONSHOTS.ORG names.

Plaintiff filed this lawsuit on October 26, 2016.  (ECF No. 1.)  NantWorks, NantHealth, and Nant IP were served on October 28, 2016.  (ECF No. 9.)  Dr. Soon-Shiong was served on November 17, 2016.  (*Id*.)  On November 18, 2016, the parties filed a stipulated motion to extend the time for all Defendants to answer or otherwise respond to the Summons and Complaint until December 16, 2016.  (ECF No. 6.)  The Court granted the motion.  (ECF No. 11.)  Plaintiff filed its First Amended Complaint on December 1, 2016.  (ECF No. 13.)  The Court has scheduled an initial case conference for January 9, 2017.  (ECF No. 4.)

## II.     ISSUES BEFORE THE COURT

A.     Can the Court exercise personal jurisdiction over the California Defendants when Plaintiff has not pled and cannot show that the California Defendants have sufficient minimum contacts with the State of Texas?  (*De novo* is the standard of review for dismissal for lack of personal jurisdiction.  *Gardemal v. Westin Hotel Co*., 186 F.3d 588, 592 (5th Cir. 1999)).

B.     Alternatively, should the Court transfer this case to the United States District

Court for the Central District Court of California where all of the Defendants are located and subject to personal jurisdiction?  (A motion to transfer venue is addressed to the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Casarez v. Burlington Northern/Santa Fe Co*., 193 F.3d 334, 339 (5th Cir. 1999) (citing *Peteet v. Dow Chemical*, 868 F.2d 1428, 1436 (5th Cir. 1989)).

       C.      Should the Court extend the time for NantHealth to respond to the First Amended Complaint pending the outcome of the present motion?  (*Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Serv*., 925 F.2d 866, 873 (5th Cir. 1991) (reviewing denial of motion for enlargement of time under Fed. R. Civ. P. 6(b) for abuse of discretion), *cert. denied*, 502 U.S. 866, 112 S. Ct. 193, 116 L. Ed. 2d 153 (1991)).

       D.      Should the Court stay discovery on the merits pending the outcome of the present motion?  (Discovery limitations will be reversed only when arbitrary or clearly unreasonable. *Mayo v. Tri-Bell Industries, Inc*., 787 F.2d 1007, 1012 (5th Cir. 1986)).

## III.    <u>SUMMARY OF ARGUMENT</u>

The First Amended Complaint fails to plausibly allege a *prima facie* case for the exercise of personal jurisdiction over the California Defendants. The First Amended Complaint's jurisdictional allegations are wholly conclusory in nature, devoid of factual allegations necessary for the Court to conclude that the California Defendants have minimum contacts with the State of Texas sufficient to satisfy due process and to enable the Court to exercise personal jurisdiction over them.  Accordingly, the Court should dismiss the California Defendants from this action pursuant to Federal Rule of Civil Procedure 12(b)(2).

Alternatively, the Court should transfer this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). The balance of factors weighs

100147031_3

in favor of the adjudication of this case in California, where all of the Defendants are subject to personal jurisdiction.

Finally, it would be more efficient for NantHealth to answer or otherwise respond to the First Amended Complaint at the same time as the California Defendants. Moreover, it would be more efficient for the parties to start discovery after this motion is decided. Accordingly, the Court should extend the time for NantHealth to answer and stay discovery on the merits for the entire case until after the Court rules on the California Defendants' motion to dismiss.

## IV. SUMMARY OF FACTS

### A. Facts Alleged by Plaintiff the First Amended Complaint

Plaintiff is a state board established to govern the University of Texas System, a Texas state agency, whose principal place of business is located in Austin, Texas. (*Id*. 14.) Plaintiff's MD Anderson Cancer Center claims to be a leader in cancer research, treatment, and education located in Houston, Texas. (*Id*. ¶¶ 1, 33.) Plaintiff claims to have conceived of the MOON SHOTS trademark in 2012 for use in connection with an initiative to reduce mortality rates and eventually cure cancer. (*Id*. ¶ 2.) Plaintiff claims to own trademark rights in the MOON SHOT, MOON SHOTS, MOON SHOTS PROGRAM, and CANCERMOONSHOTS.ORG trademarks. (*Id*. ¶ 38.) Plaintiff has not cited any federal or state trademark registrations for any of these marks. (*See id*. ¶ 38.)

Plaintiff claims that, in 2015 and 2016, Defendants "jointly and/or severally" began using trademarks containing the terms MOONSHOT and CANCERMOONSHOT, including CANCER MOONSHOT 2020, CANCER MOONSHOT 2020 FOUNDATION, and CANCER MOONSHOT NETWORK NEWS. (*Id*. ¶ 49.) Plaintiff claims that the Nant Marks are so similar to Plaintiff's trademarks that the Nant Marks are "likely to cause confusion, mistake

4

and/or deception, all to the irreparable harm of Plaintiff," its trademarks, and their associated goodwill.  (*Id*. ¶ 55.)  Without differentiating between the separate actions of each Defendant, Plaintiff lumps all of the Defendants together and generally alleges that the "Defendants'" use of the Nant Marks constitutes statutory and common law trademark infringement.  (*Id*. ¶¶ 59-78.) Plaintiff does not allege that any of the California Defendants engaged in any alleged infringing conduct in Texas.  *See generally*, First Amended Complaint.

### B.   The California Defendants' Factual Allegations

Dr. Patrick Soon-Shiong is a trained physician, surgeon and scientist.  Over the course of his career, he pioneered novel therapies for both diabetes and cancer, published over 100 scientific papers, abstracts and book chapters, and am a named inventor on over 230 issued United States and international patents spanning myriad fields including medicine, artificial intelligence, and technology.  He is currently Chairman & CEO of Defendants NantWorks, LLC, and  NantHealth, Inc., among other positions.  (Decl. ¶ 3.)

### 1.   Introduction to "Cancer Moonshot 2020"

This case involves the name of the Cancer MoonShot 2020 program, one of the most comprehensive, collaborative initiatives launched to date seeking to accelerate the potential of combination immunotherapy as the next generation standard of care in cancer patients.  The program initiative aims to explore a new paradigm in cancer care by initiating trials involving 20 tumor types in 20,000 patients by 2020.  These findings will inform additional trials and the aspirational "moonshot" to develop an effective vaccine-based immunotherapy to combat cancer by 2020.  (Decl. ¶ 13.)  The Cancer MoonShot 2020 program invites collaboration across pharma, community and academic oncology, government, and scientific communities. This joint approach would provide researchers with necessary testing materials and patients with more

opportunities to participate through local facilities and wider insurance coverage.  (Decl. ¶ 14.)

Ultimately, the aim of the moonshot is to win the war on cancer -- to reach a point in five years where physicians manage cancer the same way they might manage any chronic disease, such as diabetes or asthma.  The goal is to reduce the time from a decade to five years when doctors can finally stop the practice of administering toxic therapies, such as high-dose chemotherapy and high-dose radiation that decimate the immune system, and instead transform cancer care by harnessing the full power of our own innate protective immune system we are born with, the guardian cell called the Natural Killer cell. By activating the body's natural killer cells to fight off the cancer the way they were designed to do and by supplementing with off-the-shelf Natural Killer cells, the goal is to end cancer as we know it by the year 2020 across all tumor types and at all stages.  (Decl. ¶ 15.)

## 2.    History of the "Rocketship" Concept

Since 1995, Dr. Soon-Shiong had the firm belief that integration and collaboration was needed to advance science and translational medicine in the field of cancer, diabetes, and life threatening diseases.  (Decl. ¶ 10a.)  This insight formed the basis of what was referred to as the "rocketship" concept in 2009 that lead to the "Cancer MoonShot 2020" program in 2015. Dr. Soon-Shiong later shared the concept together with a detailed briefing document with Dr. Lynda Chin on multiple occasions, including a visit by her and Dr. Ronald DePinho. (Decl. ¶ 10b.) Mr. DePinho is the President of the MD Anderson Institute.  Dr. Chin is a physician and researcher who left MD Anderson in 2015 and is now with The University of Texas System.  She is married to Dr. DePinho.

Since 2009, Dr. Soon-Shiong built the infrastructure of the "rocketship," including a national layer one fiber enabling the transfer of genomic data at terabyte speeds, a supercomputer

enabling bioinformatics machine learning artificial intelligence to deduce mutations at speeds of less than 60 seconds per patient enabling clinical utility of cancer genome data. (Decl. ¶ 10d.)

Details of the program were provided in a briefing document to former President Bill Clinton in January 2014 and the document was shared with Dr. Chin at around the same time. At that time, Dr. DePinho and Dr. Chin were invited to participate in a related event as outlined in the briefing document.  (Decl. ¶ 10e.)

By 2014, after multiple visits with Dr. DePinho and Dr. Lynda Chin, Dr. Soon-Shiong concluded that there was clear scientific and clinical disagreement regarding the immunotherapy approach to treating cancer patients. He made the decision not to fund MD Anderson based on his concern that instituting high-dose chemotherapy is contrary to the concept of preserving the immune system and contrary to the core principles of Cancer MoonShot 2020.  (Decl. ¶ 11.)

### 3.      Introduction of "Cancer MoonShot 2020" to the US Government

Dr. Soon-Shiong's  ideas for a cancer moonshot are what informed Vice President Joe Biden and his plans for a Government-backed moonshot program. The fight against cancer is a non-partisan issue.   Indeed, in addition to encouraging the current administration, Dr. Soon-Shiong recently met with President-Elect Donald Trump to encourage his administration to continue the fight against cancer by establishing a national and global collaborative in which our innate protective system could be harnessed and change the course of this disease forever.  (Decl. ¶ 16.)

Dr. Soon-Shiong's discussions with the current administration regarding the fight against cancer began in 2015, when Vice President Biden contacted Dr. Soon-Shiong  around April 2015 seeking advice with regard his son Beau's brain cancer and a request to interact with the treating physicians at MD Anderson."   (Decl. ¶ 17.)   Dr. Soon-Shiong met with Vice President Biden at

the White House on October 6, 2015, and presented a white paper he wrote  with input from the Genomics America coalition, titled "The Precision Against Cancer PAC: The Moonshot Program to Develop a Cancer Vaccine for 'I am N = 1'" with the concept of a vaccine-based immunotherapy and the Cancer MoonShot 2020 initiative.  He began the paper by explaining that, "In the way that JFK took us to the moon, this Administration has the opportunity to complete its own moonshot moment."  (Decl. ¶ 18.)

Shortly after the meeting on October 6, 2015, Vice President Biden announced on October 21, 2015 that he would not run for President of the United States, but would pursue his commitment to the cause of fighting cancer: He stated at the news conference: "**I believe we need a moonshot in this country to cure cancer**." (Decl. ¶ 19.)

On November 1, 2015, *The New York Times* published an article on Vice President Biden's desire to create a "moonshot" to cure cancer stating that in describing this moonshot, Vice President Biden was adopting language from Dr. Soon-Shiong to describe his aspiration for cancer research. *The New York Times* article states as follows:

> *In describing this "moonshot," Mr. Biden was adopting language used by Dr. Soon-Shiong to describe his aspiration for cancer research. The two met for an hour in the White House just a few weeks ago, and Dr. Soon-Shiong gave the vice president a two-page outline of what he had in mind."*

(Decl. ¶ 20.)

Vice President Biden wanted to learn more about the complexities of the immune system and the challenges that face rapid development of life-saving drugs, and requested further meetings to learn more about Dr. Soon-Shiong's program. On November 16th, 2015, Vice President Biden and his staff visited the company campus in Los Angeles for a briefing. (Decl. ¶¶ 21-22.)

8

100147031_3

With these insights, Vice President Biden invited Dr. Soon-Shiong to convene a meeting of representatives from pharma, payors, FDA, and the National Cancer Institute and medical oncologists both from academia and community.  This four-hour meeting was held on December 1, 2015 at the Vice President's residence on the Naval Observatory in Washington, D.C.  It was hosted by Vice President Biden, and chaired by Dr. Soon-Shiong. (Decl. ¶¶ 23-26.)

At the conclusion of the meeting, the participants agreed that a formal announcement of "Cancer Moonshot 2020" would be made on January 11, 2016, at the nation's largest health care conference sponsored by JP Morgan Chase in San Francisco, where CEOs of pharma, payers and health systems routinely gather every year.  The press release announced the launch of the "Cancer Moonshot 2020" program and the formation of the National Immunotherapy Coalition ("NIC").  (Decl. ¶ 27.)

Unbeknownst to Dr. Soon-Shiong (and apparently unbeknownst to Vice President Biden), the next day, on January 12, 2016, at the State of the Union address, President Obama announced that Vice President Biden would serve as the head of the government's version of the moonshot program, which became known as the "National Cancer Moonshot Initiative." Notably, President Obama announced the Government program *the day after the NIC announced the Cancer Moonshot 2020 program*.  (Decl. ¶ 28.)

Background regarding the goals of these "moonshot" initiatives was provided in a June 2016 article in *Nature Biotechnology*.  The article describes the various moonshot initiatives, including the National Cancer Moonshot Initiative, our Cancer Moonshot 2020 Program, and MD Anderson's Moon Shots Program.  Notably, when expressly asked whether there was any concern about confusion between the various moonshot programs, none of the representatives

9

from any of the programs, including the MD Anderson Cancer Center, expressed any concern. (Decl. ¶ 29.)

None of these activities relating to the adoption and use of the Cancer Moonshot 2020 name involved the State of Texas.  (Decl. ¶ 35.)

### 4. Background on "moonshot" and the "Cancer 2020 Moonshot" Name

The word "moonshot" refers to a groundbreaking, ambitious program.  It is inspired by President Kennedy's aggressive and successful "moonshot" program to put an American on the moon within a decade of his 1961 speech.  "Moonshot" is not a name associated with a single program or a single entity or organization. It is a generic or descriptive term used by several organizations in a variety of fields.   (Decl. ¶ 36.)

In January 2016, Nant IP filed trademark applications for "Cancer MoonShot 2020," "Cancer MoonShot 2020 Foundation," and "Cancer Moonshot Network News."  The intent was not to stop others from using their own "moonshot" program names. (Decl. ¶ 37.)  The CANCER MOONSHOT 2020 trademarks were allowed by United States Patent and Trademark Office. (Decl. ¶ 38.)

### 5. Lack of California Defendants' Contacts with Texas

NantWorks is a Delaware limited liability company whose principal place of business is located in Culver City, California. Nant IP is a Delaware limited liability company whose principal place of business is located in Culver City, California. NantHealth is a Delaware corporation whose principal place of business is located in Culver City, California. However, NantHealth has an office in Dallas, Texas.  In contrast, NantWorks and Nant IP do not engage in business in the State of Texas and have not engaged in business in the States of Texas at least for

the past few years. Dr. Soon-Shiong resides in California. (Decl. ¶ 39.)   For convenience, NantWorks, Nant IP and Dr. Soon-Shiong will be referred to as the "California Defendants."

The California Defendants are not citizens or residents of Texas. (Decl. ¶ 40.)    The California Defendants do not maintain a place of business in Texas. (Decl. ¶ 41.)   The California Defendants do not maintain offices, mailing addresses, or telephone numbers in Texas. (Decl. ¶ 42.)   The California Defendants do not have any employees working in Texas.  (Decl. ¶ 43.) The California Defendants are not licensed, registered, or authorized to do business in Texas. (Decl. ¶ 44.)   The California Defendants are not required to maintain and do not maintain a registered agent for service of process in Texas. (Decl. ¶ 45.)   The California Defendants have not filed any Articles of Organization or operating agreements in Texas. (Decl. ¶ 46.)    The California Defendants do not have any bank accounts located in Texas. (Decl. ¶ 47.)   The California Defendants do not own any real property in Texas. (Decl. ¶ 48.)   The California Defendants have not paid any income or property taxes to the State of Texas.  (Decl. ¶ 49.)   The California Defendants have not used the CANCER MOONSHOT 2020 marks at issue in connection with any activity in the State of Texas.  (Decl. ¶ 50.)

## V.    ARGUMENT

### A.    The First Amended Complaint Fails to Plausibly Allege A *Prima Facie* Case for the Exercise of Personal Jurisdiction Over the California Defendants.

#### 1.    Introduction

The Texas long arm statute extends personal jurisdiction to the extent permitted by federal due process. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc*., 9 F.3d 415, 418 (5th Cir. 1993). Two types of personal jurisdiction may be exercised over a nonresident defendant: general personal jurisdiction and specific personal jurisdiction.  *Freudensprung v. Offshore Tech. Serve, Inc*., 379 F.3d 327, 343 (5th Cir. 2004). Under either a general or specific jurisdiction

analysis, the "constitutional touchstone" is whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174 (1985).  The exercise of jurisdiction must not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).  The defendant's connections with the forum state must demonstrate that the defendant "should reasonably anticipate being haled into court in the forum state." *J-L Chieftan, Inc. v. Western Skyways, Inc*., 351 F. Supp. 2d 587 (E.D. Tex. 2004) (citations omitted).

The question of whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 775, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L.Ed.2d 683 (1977)).  The relationship must arise out of contacts that the "defendant *himself* " creates with the forum State. *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115, 1122, 188 L. Ed 2d 12 (2014) (emphasis in original).  Thus, a plaintiff cannot create personal jurisdiction by pointing to its own contacts with the forum state. *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253-54, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958).

Plaintiff bears the burden of proving this Court's personal jurisdiction over the Defendants. *Fielding v. Hubert Burda Media, Inc*., 415 F.3d 419, 424 (5th Cir. 2005); *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002).  Plaintiff is required to plead sufficient facts in the Complaint to establish a *prima facie* case of jurisdiction. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).  The Court may accept as true only uncontroverted allegations and only if those allegations are *not conclusory*. *Central Freight Lines, Inc. v. APA Transport Corp*., 322 F.3d 376, 380 (5th Cir. 2003); *J.R. Stripling v. Jordan*

12

*Prod. Co., LLC.*, 234 F.3d 863, 869 (5th Cir. 2000). Indeed, the *prima facie* case requirement does not demand that this Court credit conclusory allegations, even if they remain uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

As discussed below, Plaintiff has not satisfied its burden. The First Amended Complaint does not plausibly allege that the California Defendants are subject to general or specific personal jurisdiction in Texas. As discussed below, the First Amended Complaint is devoid of facts showing that any of the California Defendants have such "continuous and systematic" contacts with Texas that they can be said to be at "home" there. Nor does the First Amended Complaint allege that the California Defendants have engaged in activities targeting Texas, from which Plaintiff's claims arise.

Furthermore, Plaintiff's failure to identify the specific Texas contacts of each individual defendant is fatal. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum state must be assessed individually"); *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003) ("Plaintiff cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant.")

## 2.   The First Amended Complaint Fails to Allege a *Prima Facie* Case for the Exercise of <u>General</u> Personal Jurisdiction Over the California Defendants.

The standard for establishing general personal jurisdiction is demanding. General personal jurisdiction only exists where a defendant is shown to have substantial "continuing and systematic contacts" with the forum state. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992), *cert. denied*, 506 U.S. 867 (1992). "[t]he inquiry . . . is whether

13

[a defendant's] 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 761, 187 L. Ed. 2d 624 (2014) (internal quotation omitted).  A court can adjudicate claims that are unrelated to a defendant's contact with the forum state only when there is general personal jurisdiction.  *Freudensprung*, 379 F.3d at 343.  Plaintiff bears the burden of proof that jurisdiction over the non-resident defendants is proper.  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005).

Plaintiff cannot meet that burden here.  General personal jurisdiction turns on the assessment of "contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecom. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999).  The exercise of general personal jurisdiction over a non-resident defendant is appropriate only where the defendant's activities in the forum state are so "substantial" or "continuous and systematic" that the defendant may be deemed present in the forum. *Helicopteros Nacionales De Columbia S.A. v. Hall*, 466 U.S. 408, 415 (1984).  The court does not view each contact in isolation.  Rather, all contacts must "be carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuing and systematic activity." *J-L Chieftan, Inc. v. Western Skyways, Inc.*, 351 F. Supp. 2d 587 (E.D. Tex. 2004) (quoting *Schlobohm v. Schapiro*, 784 S.W.2d 355, 359 (Tex. 1990); *see also American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).  Because general personal jurisdiction requires a showing that the defendant conducted substantial activities within the forum, it requires a far more demanding minimum contacts analysis than for specific personal jurisdiction.  *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 595 (5th Cir. 1999).

Plaintiff does not allege that the California Defendants have substantial continuous and

14

systematic contacts with Texas that would satisfy the heightened scrutiny required for general jurisdiction.  Notwithstanding this failure, the facts establish that the California Defendants have no contacts, let alone sufficient minimum contacts, with Texas to justify the exercise of general jurisdiction over them.  (Soon-Shiong Decl. ¶¶ 39 to 49.)  The California Defendants do not maintain an office, mailing address, or telephone number in Texas and are not required to maintain, do not maintain, and have never maintained a registered agent for service of process in Texas. (*Id*.)  Moreover, the California Defendants do not maintain a place of business in Texas nor have the California Defendants ever had employees working for them in Texas. (*Id*.)  The California Defendants are not registered or authorized, and have never been registered or authorized, to do business in Texas and have not filed any Articles of Organization or Incorporation with the State of Texas. (*Id*.)  Additionally, the California Defendants do not own any real property in Texas, do not have any bank accounts in Texas, and have never paid any income or property taxes in Texas. (*Id.*)

Simply stated, the California Defendants do not engage in business in Texas.  Therefore, the Court cannot assert general jurisdiction over them.  *See J.D. Fields & Co., Inc. v. W.H. Streit, Inc.*, 21 S.W.3d 599, 602 (Tex. App.-Houston [1st Dist.] 2000) (finding no general jurisdiction where defendant company "is not licensed to do business in Texas, does not maintain a registered agent for service of process in Texas, does not own or lease property in Texas ... [and] has never had any offices, employees, mailing addresses, or telephone listing in Texas").

Furthermore, although not determinative, "foreseeability" is an important consideration in deciding whether a nonresident defendant has purposefully established "minimum contacts" with the forum state.  *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227 (Tex. 1991).  For a plaintiff to prevail, the actions of the nonresident defendants

15

must justify a conclusion that they should have reasonably anticipated being called into court in the forum state. *Temperature Sys. Inc. v. Bill Pepper, Inc*., 854 S.W.2d 669, 675 (Tex. App. 1993). Here, the California Defendants could not have foreseen that their alleged use of the Nant Marks would subject them to personal jurisdiction in Texas, a state in which they do not and have never conducted business. Indeed, the Plaintiff did not own and had not applied for any trademark applications for the MOON SHOT marks at the time that the Defendants' allegedly adopted the Nant Marks. (Soon-Shiong Decl. ¶ __.) "Moonshot" refers to a groundbreaking program. (*Id.* ¶ __.) "Moonshot" is not itself a trademark or name associated with a single program or single entity or organization. It is a generic or descriptive term used by several organizations. (*Id.* ¶ __.) It refers to President Kennedy's aggressive and successful "moonshot" program to put an American on the moon within a decade of his 1961 speech announcing the program. (*Id.* ¶ __.) In addition, Plaintiff was using "moonshot" in a descriptive sense, not as a trademark.

> **3.     The First Amended Complaint Does Not Allege a *Prima Facie* Case For the Exercise of <u>Specific</u> Personal Jurisdiction Over the California Defendants.**

Likewise, Plaintiff cannot establish that the Court has specific personal jurisdiction over the California Defendants. Specific personal jurisdiction arises only when the defendant's specific contacts with the forum create claims related to those specific contacts in the forum. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific personal jurisdiction is limited, however, because it only extends to those claims that arise out of or relate to the specific activities of the defendant within the forum. *Panda Brandywine*, 253 F.3d at 868; *Gardemal v. Westin Hotel Co*., 186 F.3d 588, 595 (5th Cir. 1999) (to establish specific personal jurisdiction, "the defendant must have purposefully directed his activities at the residents of the forum, and

the litigation must result from the alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum.").

More precisely, specific personal jurisdiction requires that a foreign defendant purposely direct his or her activities at the forum state, and further requires that the litigation result from alleged injuries that arise out of or relate to those forum-directed activities. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003) (emphasis added). This "purposeful availment" requirement exists so that a defendant will not be hauled into a jurisdiction as a result of "random," "fortuitous," or "attenuated" contacts, or by any of the "unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

In 2014, the Supreme Court clarified that the defendants' "suit-related conduct must create a substantial connection with the forum State." *Walden*, ___ U.S. ___, 134 S. Ct. at ___, 188 L. Ed 2d at ___. Under *Walden*, the fact that a plaintiff suffered foreseeable negative effects in the forum is not enough to authorize jurisdiction where the location of the harm is not tied to the defendant's conduct. *Id.* Thus, the mere fact that the Board is located in Texas and allegedly suffered harm there is insufficient. *Id.*

Specific personal jurisdiction is plainly lacking here. Plaintiff has not alleged any specific facts or activities by the California Defendants *directed at Texas*. Plaintiff cannot establish that its claims arise from the California Defendants' *Texas-directed activities* and, indeed, there are no such activities. In fact, all of the events that took place relating to the formation, adoption and use of the Nant Marks at issue in this case, occurred in California and other locations outside of Texas. *See* Decl. ¶¶ 10-31. For example, in *Fogo de Chao Churrascaria (Holdings) LLP v. Fogo E Brasa, L.L.C.*, No. 3:03-CV-1351-B, 2004, WL 2607984 (N.D. Tex. Nov. 17, 2004), the court rejected plaintiff's argument that the court could

exercise specific jurisdiction over the defendant, a restaurant in Arizona that allegedly infringed the plaintiff's trademark, because the plaintiff was located in Texas and allegedly suffered injury there. The plaintiff argued that specific jurisdiction exists because the alleged trademark infringement "sounds in tort" and thus "courts in the State of Texas, where the alleged tort victim resides, may exercise jurisdiction over [defendant]." The court rejected this notion, stating that "the Fifth Circuit in *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 - 69 (5th Cir. 2001), held that the mere effect of a defendant's allegedly tortious activity 'is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state.'" *Id.* at *4. (Emphasis added.)

Here, the Plaintiff has failed to identify any forum-specific activity by the California Defendants with respect to use of the Nant Marks, let alone a substantial connection.

### 3. The First Amended Complaint Fails to Allege Facts Sufficient to Impute the Texas Contacts of NantHealth to the California Defendants.

In the absence of any evidence of forum-related activities by the California Defendants, Plaintiff attempts to bootstrap personal jurisdiction over the California Defendants by imputing the contacts of NantHealth with Texas to the California Defendants. The First Amended Complaint does not plausibly allege any specific factual basis for disregarding the legal separateness of any of the Defendants or for imputing the jurisdictionally relevant contacts of any Defendant upon any other Defendant.

Texas law recognizes that the corporate form can be disregarded in certain circumstances. *See Castleberry v. Branscum*, 721 S.W.2d 270, 272–73 (Tex. 1986). One of the bases for doing so is the alter ego doctrine, whereby "a corporation is organized and operated as a mere tool or business conduit of another corporation." *Id.* at 272. Proof of imputed contacts or an alter ego

relationship may be the basis for exercising jurisdiction over a non-resident defendant.  *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002); *see also Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983).   The Texas Supreme Court has "acknowledged that jurisdictional veil-piercing and substantive veil-piercing involve different elements of proof" given that jurisdiction implicates due process considerations that cannot be overridden by statutes or common law.  *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 174–75 (Tex. 2007).   The court outlined the following factors relevant for jurisdictional veil-piercing:

> To "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary.  ***But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice***.

*PHC–Minden*, 235 S.W.3d at 175 (quoting *BMC Software*, 83 S.W.3d at 799) (emphasis added). Other factors to consider are "the amount of the subsidiary's stock owned by the parent corporation, the existence of separate headquarters, the observance of corporate formalities, and the degree of the parent's control over the general policy and administration of the subsidiary." *Id*. (citing 4A Wright & Miller, Federal Practice & Procedure § 1069).  However, "[a] subsidiary corporation will not be regarded as the alter ego of its parent ***merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders***." *Id*. (quoting *Gentry v. Credit Plan Corp.*, 528 S.W.2d 571, 573 (Tex. 1975)) (emphasis added). There must be a "plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family."  *Id*. at 176 (quoting *Dickson Marine, Inc. v. Panalpina, Inc*., 179 F.3d 331, 338 (5th Cir. 1999)).  Not pertinent to jurisdictional veil piercing analysis, however, are allegations of fraud and a common name

among the entities. *Id*. at 175.

The First Amended Complaint attempts to allege, through mere conclusions, that NantHealth's contacts with Texas should be attributed to the California Defendants. The First Amended Complaint states, in relevant part, the following:

> Upon further information and belief, through its close relationship with the other Defendants [and] its direction and/or control of the other Nant Entities . . . Nant Works has also willfully, intentionally, and/or knowingly infringed or otherwise violated the trademark rights of Plaintiff . . . .

(First Am. Compl. ¶ 25.)

> Upon further information and belief, through its close business and licensing relationships with the other Defendants . . . Nant Holdings IP has . . . willfully, intentionally, and/or knowingly infringed or otherwise violated the trademark rights of Plaintiff . . . .

(First Am. Compl. ¶ 26.)

> [U]pon information and belief, Soon-Shiong, through his close relationship with the other Defendants [and] through his direction and control over the other Defendants . . . has willfully, intentionally, and/or knowingly infringed or otherwise violated the trademark rights of Plaintiff . . . .

(First Am. Compl. ¶ 27.)

These allegations should be disregarded because they are merely *conclusory* allegations entitled to no weight. *Central Freight Lines, Inc.*, 322 F.3d at 380 (holding court may accept as true only uncontroverted non-conclusory allegations); *Panda Brandywine Corp.*, 253 F.3d at 869 (even uncontroverted conclusory allegations not credited). The First Amended Complaint contains no specific factual allegations that would allow the Court to disregard the legal separateness of Dr. Soon-Shiong, NantHealth, NantWorks, or Nant IP and show that they are the alter egos of one another. For example, the First Amended Complaint fails to set forth facts establishing that NantWorks controls NantHealth to such an extreme degree that its Texas contacts should be imputed to them, or vice versa. The same is true as to Nant IP. Similarly, the

20

First Amended Complaint fails to allege that Dr. Soon-Shiong controls NantHealth to such an extreme degree that its Texas contacts should be attributed to him.[1]  Indeed, the Plaintiff has failed to allege any facts establishing that any of the Defendants cease to be separate individuals or entities such that they should be viewed as one and the same.

Furthermore, the First Amended Complaint fails to allege, for any of the California Defendants: (1) the amount of stock owned in any other Defendant; (2) the existence, *vel non* and degree to which any of the Defendants have common officers and directors; (3) the degree to which the Defendants observed corporate formalities; (4) whether the Defendants maintain separate accounting systems, books, or records; (5) the existence of control over any other Defendant's general policy; or (6) the existence of control over the daily activities of any other Defendant.  *See Hargrave*, 710 F.2d at 1154 (listing factors considered in alter ego analysis).

Accordingly, and for all of the reasons set forth above, the First Amended Complaint fails to plausibly allege a *prima facie* case for the exercise of personal jurisdiction over the California Defendants.

**B.     Alternatively, this Case Should Be Transferred to the Central District of California Where All of the Defendants are Located.**

Even if this Court has personal jurisdiction over the California Defendants, the Court should still transfer this case to the United States District Court for the Central District of California.  Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses" and "in the interest of justice." "The determination of 'convenience' turns on a number of private and

---

[1]   While the First Amended Complaint does allege that Nant IP has licensed the Nant Marks to other Nant entities (First. Am. Compl. ¶ 26), the mere fact that a licensor-licensee relationship exists is not a sufficient basis for exercising general personal jurisdiction unless a plaintiff alleges facts showing that the licensor does, in fact, control how the allegedly infringing marks are used in the marketplace.  *See, e.g., Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 736-37 (N.D. Ill. 2011) ("As a general rule, personal jurisdiction does not exist over a licensor by virtue of its status if it does not exercise control over the licensee's sales activities and has no dealings with the licensee 'beyond the receipt of royalty income.'").

public interest factors, none of which are given dispositive weight." *In Re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  The "private concerns" factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious, and inexpensive." *Id.* The "public concern" factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws of the application of foreign law." *Id.*  As shown below, all of these factors favor transfer of this action.

The private concerns weigh in favor of transferring the case to California.  All of the Defendants are based in California.  All of Defendants' witnesses are located in California, as are any of their documents relevant to the case.  In contrast, the Plaintiff is based in Austin, Texas, not in this judicial district.  Overall, the great "cost of attendance for willing witnesses," along with the overall expenses of maintaining this suit in Texas, support transferring the case to California.

The public concerns also weigh in favor of transferring this case to California.  The courts are less congested in the Central District of California. There are 681 cases pending per judge in this district with an average time to trial of 23.4 months.  *See United States District Court – National Judicial Caseload Profile* (June 2016).  There are 441 cases pending per judge in the Central District of California with an average time to trial of 19.8.  *Id.*  While Texas may have a local interest in deciding a case involving the Board, the case at heart involves national interests, namely, whether "moonshot" is a descriptive or generic term such that any of the interested parties, including the Board, the Defendants, the U.S. Government, and others, have a

right to use the word in connection with programs of national interest, namely, finding a cure for cancer.  Finally, there is no particular advantage of this Court in applying the law.  This is primarily a case involving the application of federal trademark law.

Plaintiff will undoubtedly argue that its choice of forum should be afforded great deference.  However, the law is to the contrary under these circumstances.  "[I]t is clear under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative."  *In Re Horseshoe Ent'mt*, 337 F.3d 429, 434 (5th Cir. 2003).  Specifically, when "none of the operative facts occur within the forum of original selection, the plaintiff's choice is entitled to only minimal consideration." *Morgan v. Illinois Central Railroad Co.*, 161 F. Supp. 119, 120 (S.D. Tex. 1958) (emphasis added). As demonstrated above, Plaintiff's choice of forum should be afforded minimal weight, because all of the Defendants and most of the witnesses are located in California and Plaintiff is not located in this judicial district.

Accordingly, the Court should transfer this case to the Central District of California.

**C.    The Court Should Extend the Time for NantHealth to Answer Until After it Decides This Motion.**

The Court has broad discretion to extend the time for NantHealth to answer.  *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275-76 (5th Cir. 2015) ("[D]istrict courts have broad discretion under Rule 6(b) to expand filing deadlines").  Here, extending the time for NantHealth to answer or otherwise respond to the First Amended Complaint until after the Court has decided the present motion will best serve the interests of judicial and party economy.  If the Court dismisses or transfers this case, then NantHealth will be in the same position as the California Defendants.  If the Court does not dismiss or transfer this case, then NantHealth will promptly respond to the First Amended Complaint and proceed with discovery as the Court

directs.

**D.     Discovery on the Merits Should Be Stayed Pending the Outcome Of This Motion.**

The Court should stay discovery on the merits until the Court decides this motion to dismiss. Expensive and involved discovery should be deferred until the dispositive motions on jurisdiction are heard. *See Scroggins v. Air Cargo, Inc*., 534 F.2d 1124, 1133 (5th Cir. 1976) (trial court may properly exercise its discretion to stay discovery pending a decision on a dispositive motion).

Moreover, if the Court dismisses Nant IP from this case, the entirety of this lawsuit should be dismissed.  Nant IP, the owner of the Nant Marks, is an indispensable party that must be joined under Federal Rule of Civil Procedure 19.   Soon-Shiong Decl. ¶ 3; *American Rice, Inc., v. Producers Rice Mill, Inc*., No. H-05-3227, 2006 WL 1984592 at *9 (S.D. Tex. July 14, 2006), ("Under Rule 19 owners of trademarks are usually treated as necessary and indispensable parties in a trademark case."); *see, e.g., Ass'n of Co-operative Members, Inc. v. Farmland Indus. Inc*., 684 F.2d 1134, 1143 (5th Cir. 1982).  Trademark owners are usually indispensable parties because they have an interest in being able to fully exploit their marks that might be impaired if the opposing party prevails.  *See Jaguar Cars Ltd. v. Manufactures Des Montres Jaguar*, 196 F.R.D. 306, 308 (E.D. Mich. 2000); *see also Lisseveld v. Marcus*, 173 F.R.D. 689, 693 (M.D. Fla. 1997) (noting that this situation typically arises when the licensee of a trademark asserts its rights against an alleged infringer without joining the licensor).  Therefore, if this Court does not have jurisdiction over Nant IP, the entirety of this lawsuit must be dismissed for failure to join an indispensable party, and the Court need not consider whether there is personal jurisdiction over any of the other Defendants.

100147031_3

## VI.   <u>CONCLUSION</u>

The Court should grant Defendants' motion to dismiss or transfer and, pending the Court's ruling on this motion, extend NantHealth's time for answering the Complaint and stay discovery.

Dated: December 16, 2016

Respectfully submitted,

REYNOLDS FRIZZELL LLP

By: /s/ *Jeremy Doyle*
Jeremy Doyle
State Bar No. 24012553
Federal ID No.24559
1100 Louisiana, Suite 3500
Houston, Texas 77002
Tel.    713-485-7200
Fax.    713-485-7250
doyle@reynoldsfrizzell.com

*Attorney-in-Charge*

Of Counsel:
Solace Southwick
State Bar No. 11522150
Federal ID No. 11440
1100 Louisiana, Suite 3500
Houston, Texas 77002
Tel.    713-485-7200
Fax.    713-485-7250
ssouthwick@reynoldsfrizzell.com

LEWIS ROCA ROTHGERBER CHRISTIE LLP
Michael J. McCue (admitted pro hac vice)
State Bar No. 6055 (Nevada)
Jonathan W. Fountain (admitted pro hac vice)
State Bar No. 10351 (Nevada)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel.    (702) 949-8200
Fax.    (702) 949-8398
       mmccue@lrrc.com
       jfountain@lrrc.com

**ATTORNEYS FOR DEFENDANTS**

100147031_3

## <u>CERTIFICATE OF SERVICE</u>

   This is to certify that on December 16, 2016, a true and correct copy of the foregoing document was served on all counsel of record with the Clerk of the Court using the Electronic Case File System of the Southern District of Texas.


              /s/ *Jeremy Doyle*     
              Jeremy Doyle